* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On March 29, 2004, PGT Industries and plaintiff were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On March 29, 2004, an employment relationship existed between plaintiff and PGT Industries.
3. Broadspire is the third party administrator for PGT Industries and was on the risk at the time of the alleged incident.
4. Plaintiff' s average weekly wage is $385.38 per week which yields a compensation rate of $256.93.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing plaintiff was 36 years old. Plaintiff graduated from high school and pursued Business Management for two years in college.
2. Plaintiff began employment with PGT Industries at the beginning of February 2004. PGT Industries manufactures windows and patio rooms. Plaintiff was assigned to the screen line as an assembler of windows. His primary job duties were to help assemble windows and put them on carts to be shipped out. The windows weighed up to approximately 100 pounds. Normal working hours were from 7 a.m. to 3 p.m. with overtime being mandatory at times.
3. Plaintiff requested and was approved to be moved to a new position on March 29, 2004. His new position required him to fasten the windows into the window frame and then flip them over. Early in the shift, while lifting a window, he felt a sharp pain in his back. This constituted a specific traumatic incident of the work performed. He tried to lift the window again, and the pain became worse. Plaintiff was assisted off the line by a co-worker, and he was directed to Med Choice Urgent Care for treatment. Defendants had not accepted plaintiff's specific traumatic incident as compensable and thus had no legal right to direct medical care.
4. The physicians at Med Choice examined plaintiff and mis-diagnosed him with a pulled muscle. They prescribed medication and issued restrictions of no bending, pulling, pushing, or twisting. Plaintiff returned to work, and was placed in an alternate position where he was responsible for working on the window frames. The correct diagnosis, as confirmed later by discogram, was annular tears in L4-L5 and L5-A1.
5. Plaintiff returned to his original position the following day. He continued to experience back pain.
6. Plaintiff continued to follow up his care with Dr. McKenzie with Med Care. Plaintiff was released to return to work without restrictions by Dr. McKenzie on May 4, 2004, based on his incorrect diagnosis. Dr. McKenzie also suggested physical therapy and proper body mechanics for lifting. Plaintiff continued to experience pain and problems with his back.
7. On May 19, 2004, while getting dressed to go to work, plaintiff experienced a very sharp pain in his lower back to the point he could not move. Plaintiff, a single parent, dropped his children off at his mother's home, and then went straight to the emergency room. The emergency room records related this incident to the compensable specific traumatic incident of March 29, 2004.
8. Plaintiff was immediately checked into the emergency room, and based on his exam he was referred for a same day MRI. The MRI revealed an asymmetric disk bulge to the right lateral location of L4/L5. Medication was prescribed and plaintiff was discharged to follow up with his treating physician.
9. Plaintiff went to work after leaving the emergency room and turned in the emergency room paperwork to the safety supervisor. Plaintiff was told that he was going to be suspended from work as he had not called in to work that morning. Plaintiff's supervisor expressed anger that plaintiff did not go to Med Choice for treatment; however, Med Choice was not open at the time plaintiff went to the emergency room. Plaintiff was told that he was not to come on company property and that he would receive a call as to when his suspension would end or if he was being terminated.
10. Plaintiff was to report to work at 7 a.m. that day. He was admitted to the emergency room at 6:47 a.m. and was discharged at 12:55 p.m. Plaintiff did not have any opportunity to call his employer while he was on the way to or in the emergency room. Defendants' testimony that plaintiff's shift began at 5 a.m. is not credible. Defendants' argument that because plaintiff drove himself to the hospital he could have called his supervisor has no merit. Plaintiff's alleged failure to notify his employer that he would not be able to start his shift on time was caused entirely by sequelae of a compensable specific traumatic incident of the work assigned.
11. Plaintiff followed up his emergency room visit with Dr. McKenzie on May 21, 2004. Dr. McKenzie again recommended physical therapy, and was waiting to hear if workers compensation would approve this recommendation.
12. Plaintiff was under the impression that he was under suspension and would be fired, and he traveled to Texas to make arrangements for his children. While in Texas, plaintiff contacted PGT Industries regarding his suspension. A meeting was arranged for the following week. Plaintiff was informed at the meeting that he was being terminated because he did not call in when he went to the emergency room. At the time of his termination, he was still under light duty restrictions by Dr. McKenzie, and had just received approval for physical therapy.
13. Plaintiff moved to Texas to stay with family and receive help in looking after his children while he was out of work. Due to problems in receiving health care from Broadspire, he returned to North Carolina. Upon return to North Carolina, plaintiff discovered that he was no longer being authorized by Broadspire to treat for his back injury.
14. The carrier arranged for plaintiff to be evaluated for a second opinion by Dr. Greig McAvoy with Rocky Mount Orthopaedics and Sports Medicine,. On January 24, 2005, Dr. McAvoy mis-diagnosed plaintiff with low back pain. His testimony is entitled to little weight since he did not treat plaintiff and he failed to diagnose the annular tears in plaintiff's back.
15. Plaintiff sought treatment with the Halifax Regional Medical Center's emergency room and was referred to Roanoke Surgical Specialists. Plaintiff was evaluated by Dr. Holm on February 16, 2005. Dr. Holm recommended physical therapy and changed plaintiff's medications. Plaintiff returned in a month with no significant improvement in his pain. Dr. Holm referred plaintiff to Dr. Joey Thomas for pain management purposes.
16. Plaintiff, through counsel, filed a Form 33 on March 10, 2005.
17. Dr. Thomas evaluated plaintiff on April 7, 2005, and administered a course of injections into plaintiff's back. When the injections did not provide any long-lasting relief, Dr. Thomas recommended that plaintiff undergo a discogram. The discogram revealed that plaintiff had two annular tears, one at L4-L5, the other at L5-A1. Based on the results of the discogram, Dr. Thomas referred plaintiff to Dr. Reeg in Greenville for further treatment. Dr. Thomas was not able to render an opinion with respect to cause of the annular tears he found.
18. Dr. Reeg evaluated plaintiff on August 11, 2005. Based on the results of the discogram and his examination, Dr. Reeg asked that an MRI be performed on plaintiff's lumbar spine. The MRI revealed a central disc bulge at L4-L5 and L5-S1.
19. Dr. Reeg discussed treatment options with plaintiff. Given that it was 18 months post injury, and he had no improvement in his pain, plaintiff opted for surgery. Dr. Reeg performed a lumbar fusion with interbody grafting with carbon fiber cages on October 10, 2005. Dr. Reeg testified to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the specific traumatic incident suffered by plaintiff at work on March 29, 2004, exacerbated a pre-existing non-symptomatic degenerative disc condition and caused it to become disabling. This exacerbation and its sequelae necessitated the medical treatment performed by Dr. Reeg.
20. Plaintiff followed up with Dr. Reeg on January 12, 2006. Dr. Reeg released him to work with light duty restrictions. Upon being told of plaintiff's job description of his position with PGT Industries, Dr. Reeg rendered the opinion, and the Full Commission finds as fact, that plaintiff would be unable to do that position by reason of his compensable injury. Defendants offered no light duty work or vocational training.
21. Plaintiff has looked for work within his restrictions prior to and subsequent to his surgery. Plaintiff has applied with companies such as Wal-Mart, Lowe's, Coca-Cola and has made contacts via the Employment Security Commission. Plaintiff has not been offered work. Plaintiff has made reasonable efforts to locate work but has not been able to do so because of his compensable injury and resulting work restrictions.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On March 29, 2004, plaintiff's average weekly wage was $385.38, which yields a compensation rate of $256.93. N.C. Gen. Stat. § 97-2(5).
2. On March 29, 2004, plaintiff sustained an injury by accident arising out of and in the course of his employment with PGT Industries in the form of a specific traumatic incident. N.C. Gen. Stat. § 97-2(6).
3. Aggravation of a pre-existing condition which results in loss of wage earning capacity is compensable. Smith v. Champion Int'l, 134 NC. App. 180, 182, 517 S.E.2d 164, 166 (1999); See also, Hoyle v. CarolinaAssociated Mills, 122 N.C. App. 462, 466, 470 S.E.2d 357, 359 (1996);Ruffin v. Compass Group. USA, 150 N.C. App. 480, 484, 563 S.E.2d 633,637 (2002). Furthermore, "[the work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident contributed in some reasonable degree to plaintiff's disability, she is entitled to compensation."Smith, 134 NC App. at 182; See also, Anderson v. Northwestern MotorCo., 233 N.C. 372, 64 S.E.2d 265 (1951); Drakeford v. CharlotteExpress, 158 N.C. App. 432, 438-439, 581 S.E.2d 97, 102 (2003);Hoyle, 122 N.C. App. at 466.
4. Defendants did not meet their burden to show that plaintiff was terminated for misconduct or fault unrelated to the compensable injury. Plaintiff's alleged failure to observe a call-in policy on May 29, 2004, resulted directly from sequelae of his compensable injury. Seagraves v.Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 297 (1996).
5. As a result of his March 29, 2004 specific traumatic incident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $256.93 per week for the period of May 28, 2004 through the present and continuing until such time as he returns to work, or further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. As a result of his March 29, 2004 specific traumatic incident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred by reason of his compensable injury. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $256.93 per week for the period of May 28, 2004 through the present and continuing until such time as he returns to work, or further Order of the Commission. Compensation that has accrued shall be paid to plaintiff in a lump sum, with interest at 8% per year. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation that has accrued, defendants shall deduct 25% from the amounts otherwise due plaintiff and shall pay this amount in directly to counsel for plaintiff. Defendants shall pay directly to plaintiff's counsel every fourth check thereafter.
4. Defendants shall pay the costs.
This 29th day of December 2006.
 S/___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRIS SCOTT COMMISSIONER